

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-09-00464-CV

IN RE NOBLE EZUKANMA                                    RELATOR

------------

## ORIGINAL PROCEEDING

------------

## OPINION ON REHEARING

------------

We have considered the Attorney General's and Real Party in Interest Njideka Lawreta Ezukanma's motions for rehearing of our November 17, 2010 opinion. We deny the motions, but we withdraw our November 17, 2010 opinion and judgment and substitute the following.

### I. INTRODUCTION

Relator Noble Ezukanma filed this petition for writ of mandamus and petition for writ of habeas corpus challenging the respondent trial court's February 12, 2009 contempt order. That order holds Noble in contempt for failure to pay

child support for his six children during the months of March, April, and June 2008 and orders him confined on the second and fourth weekends of each month for a total of one hundred and seventy-four days. We conditionally grant relief.

## II. FACTUAL AND PROCEDURAL BACKGROUND

After Noble and Njideka Lawreta Ezukanma (Lawreta) were divorced, the trial court ordered Noble, in a subsequent suit to modify the parent-child relationship, to pay Lawreta $5,400 per month in child support on the first day of each month. In June 2008, the Tarrant County Domestic Relations Office IV-D Child Support Monitoring Program (DRO) filed a Motion to Enforce By Contempt, asking that Noble be held in contempt for failing to make the ordered payments for March 1, April 1, and June 1, 2008. The motion also requested that the trial court hold Noble in contempt for partially and untimely paying the December 1, 2007 and January 1 and February 1, 2008 payments. The DRO alleged that as of June 9, 2008, Noble's total cumulative arrearage was $23,044.78. The DRO also sought to hold Noble in contempt for "any future failure to make child support payments which accrue as of the date of hearing" on the motion, specifically listing the June through December 2008 payments.

Noble responded to the DRO's motion by filing a motion to modify the parent-child relationship, in which he moved the trial court to reduce his child support payments because of "changed circumstances." At a hearing in

2

February 2009 on both the motion to enforce and motion to modify, Lawreta testified that as of September 1, 2008, Noble had paid all child support due up to that time in full, including the payments for March 1, April 1, and June 1, 2008. Her payment history exhibit that the trial court admitted confirmed this testimony. However, the payment history also showed that Noble had accrued a new arrearage on payments due in September 2008 through February 2009.

The trial court denied Noble's requested child support reduction;[1] found Noble $28,656.58 in arrears (for the September 2008 through February 2009 payments); found that Noble willfully and intentionally failed to obey the trial court's child support order by failing to make payments on March 1, April 1, and June 1, 2008; held Noble in contempt for each of these violations; and sentenced him to serve 180 days' confinement for each violation, with each sentence to be served concurrently.

Noble filed a motion for reconsideration of the contempt order, in which he contended that if he were confined for 180 continuous days he would not be able to support his children; he asked the trial court to modify its order of confinement to either reduce the sentence or to allow the sentence to be served at times that would not interfere with his being able to work. The trial court's order on

---

[1]Noble appealed that denial, and this court affirmed. *See In re E.A.E.*, 02-09-00162-CV, 2010 WL 3618707, at *1 (Tex. App.—Fort Worth Sept. 16, 2010, pet. denied).

reconsideration (1) grants judgment for Lawreta for the arrearage; (2) holds Noble in contempt of court for "having willfully and intentionally disobeyed the Court's Order, specifically, for having failed to make periodic child support payments on . . . March 1, 2008, April 1, 2008, and June 1, 2008 as ordered"; and (3) orders Noble to serve 174 calendar days in jail on the second and fourth weekends of each month. Because Noble is confined for part of the month but not each day of the month, he filed both a petition for writ of mandamus and petition for habeas corpus. *See In re Long*, 984 S.W.2d 623, 625 (Tex. 1999); *In re Office of Attorney Gen. of Tex.*, 215 S.W.3d 913, 916 (Tex. App.—Fort Worth 2007, orig. proceeding). He has not filed a motion for temporary relief, and we have not granted any. *See* Tex. R. App. P. 52.10.

### III. STANDARD OF REVIEW

Mandamus relief is proper only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 207 (Tex. 2009) (orig. proceeding).

A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). With respect to the resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court unless the

4

relator establishes that the trial court could reasonably have reached only one decision and that the trial court's decision is arbitrary and unreasonable. *Id.* at 839–40. This burden is a heavy one. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding). We give deference to a trial court's factual determinations, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). A trial court abuses its discretion if it incorrectly interprets or improperly applies the law. *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 642–43 (Tex. 2009) (orig. proceeding); *Walker*, 827 S.W.2d at 840.

Contempt orders are not reviewable by appeal; therefore, if a trial court abuses its discretion by holding someone in contempt, there is no adequate remedy by appeal, and the second prong of mandamus review is satisfied. *In re Office of Attorney Gen.*, 215 S.W.3d at 915–16.

## IV.  DISCUSSION

In a single issue, Noble contends that the trial court abused its discretion by holding him in contempt and sentencing him to jail for failing to pay child support for March 1, April 1, and June 1, 2008, because he had made the payments for those months before the February 2009 hearing on the motion to enforce.  According to Noble, section 157.162(d) of the family code provides that a trial court may not hold a person in contempt for the failure to make specified child support payments if that person has made those payments in full by the time of the hearing on the motion to enforce.  Thus, Noble contends that the trial court's contempt order is void.

## A. Section 157.162(d)

In an original proceeding challenging a trial court's contempt order, the relator bears the burden of showing that the order is void. *See In re Coppock*, 277 S.W.3d 417, 418 (Tex. 2009) (orig. proceeding). An order is void if it is beyond the power of the court to enter it or if it deprives the relator of liberty without due process of law. *Id*. A contempt order deprives a relator of due process and is void if it exceeds a statutory limitation on contempt. *See Ex parte Gerdes*, 228 S.W.3d 711, 713 (Tex. App.—Corpus Christi 2006, orig. proceeding); *Gonzalez v. State*, 187 S.W.3d 166, 171–72 (Tex. App.—Waco 2006, orig. proceeding); *cf. In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005) ("A commitment order that violates the Texas Constitution is beyond the court's power and is void.").

Section 157.162(d) of the family code provides that "[t]he court may not find a respondent in contempt of court for failure to pay child support if the respondent appears at the hearing with a copy of the payment record or other evidence satisfactory to the court showing that the respondent is current in the payment of child support as ordered by the court." Tex. Fam. Code Ann. § 157.162(d) (Vernon Supp. 2010). Lawreta and the Attorney General contend that section 157.162(d) precludes a trial court from finding a person in contempt for failure to pay child support only if that person is current with *all* child support

7

payments by the time of a hearing on a motion to enforce, not just those payments for which the movant requested that the person be held in contempt. Lawreta further contends that even though Noble made the March 1, April 1, and June 1, 2008 child support payments before the February 2009 hearing, because he did not make them timely on the dates they were due, "as ordered by the court"—and because he had a new arrearage by the time of the hearing—section 157.162(d) did not prohibit the trial court from holding Noble in contempt for those payments for which the movant requested that Noble be held in contempt. We agree with neither Lawreta's nor the Attorney General's contentions.

## B. Rules of Statutory Construction

Statutory construction is a legal question that we review de novo, ascertaining and giving effect to the legislature's intent as expressed by the plain and common meaning of the statute's words. Tex. Gov't Code Ann. § 312.002 (Vernon 2005); *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007); *In re C.A.P., Jr.*, 233 S.W.3d 896, 900 (Tex. App.—Fort Worth 2008, no pet.). We begin with the statute's plain language because we assume that the legislature tried to say what it meant and, thus, that its words are the surest guide to its intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999); *In re C.A.P.*, 233 S.W.3d at 900. In ascertaining legislative intent, we do not confine our review to isolated statutory words,

8

phrases, or clauses, but we instead examine the entire act. *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001); *In re C.A.P.*, 233 S.W.3d at 900. We may also consider, among other things, the statute's objectives; legislative history; common law, former law, and similar provisions; and the consequences of the statutory construction. Tex. Gov't Code Ann. § 311.023(1)–(7) (Vernon 2005); *In re C.A.P.*, 233 S.W.3d at 900.

Every word of a statute must be presumed to have been used for a purpose. *See Quick v. City of Austin*, 7 S.W.3d 109, 123 (Tex. 1998); *Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995); *In re C.A.P.*, 233 S.W.3d at 900. Likewise, every word excluded from a statute must also be presumed to have been excluded for a purpose. *Quick*, 7 S.W.3d at 123; *Laidlaw Waste Sys., Inc.*, 904 S.W.2d at 659; *In re C.A.P.*, 233 S.W.3d at 900.

## C. Contempt Order Prohibited When Specified, Missed Child Support Payments Paid By Date of Enforcement Hearing

Lawreta and the Attorney General contend that the phrase "current in payment of child support as ordered by the court" means that the nonmovant must show that he or she has made all payments accrued as of the date of the enforcement hearing, and Lawreta further contends that the nonmovant must show that all such payments must have been made on the dates and according to the terms set forth in the trial court's order. In other words, if a nonmovant

9

appears at the enforcement hearing and has paid all accrued child support up to that date, but has failed to make those payments on the dates and according to the terms specified in the trial court's order, the trial court may still hold him or her in contempt.

This construction of the statute fails to take into account the insertion of the word "current" into section 157.162(d). If the construction urged by Lawreta and the Attorney General were correct, the statute would have to say only that a trial court could not hold a respondent in contempt for failure to pay child support if the respondent came to the hearing with sufficient documentation of payment "as ordered by the court." This would allow contempt in all situations but those in which payment records were inaccurate, misplaced, or misapplied. The word "current" means "existing at the present time" and "generally accepted, used, practiced, or prevalent at the moment." Merriam Webster Online, http://www.merriam-webster.com (last visited Mar. 8, 2011). The insertion of the word "current" into section 157.162(d) is important because it evidences an intent that the nonmovant be caught up on court-ordered payments specified in the motion to enforce as of the date of the hearing. Moreover, the legislature included the present tense "is" current at the time of the hearing, rather than the past tense "was" current, which would suggest that the nonmovant would have to prove payment was current at the time of the filing of the motion to enforce. *See* Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005). Thus, we conclude that the correct interpretation of section 157.162(d) is that a trial court may not hold a

10

nonmovant in contempt for failure to make specified child support payments if that person caught up with (i.e., is "current" in) those payments by the date of the enforcement hearing.

The contents of a motion to enforce child support are controlled by section 157.002 of the family code. Tex. Fam. Code Ann. § 157.002(a)–(b) (Vernon 2009). That section provides in pertinent part: "A motion for enforcement of child support[,] . . . if contempt is requested, must include the portion of the order allegedly violated and, for each date of alleged contempt, the amount due and the amount paid, if any." *Id.* § 157.002(b)(2). The purpose of this section is to provide a respondent with proper notice of the allegations of contempt for which he must prepare a defense at the hearing on the motion. *Ex parte Conoly*, 732 S.W.2d 695, 698 (Tex. App.—Dallas 1987, orig. proceeding). The use of past tense in prescribing the contents of an enforcement motion in which a contempt order is sought—for example, "amount *owed*," "amount *paid*," and "portion of the order allegedly *violated*"—indicates that the legislature intended such a motion to include only those violations that have already occurred at the time the motion for contempt was filed. *See* Tex. Fam. Code Ann. § 157.002(b)(1)–(2) (emphasis added). A child support order can be enforced by contempt only to the extent authorized by statute. *Conoly*, 732 S.W.2d at 698–99 (citing *Ex parte Almendarez*, 621 S.W.2d 664, 667 (Tex. Civ. App.—Fort Worth 1981, orig. proceeding). Thus, we conclude that a trial court may enforce by contempt only those violations that have occurred at the time that a motion, or an amended

11

motion, for contempt is filed. Here, the DRO's motion recites none of the amounts Noble paid, nor is there evidence in the record that the DRO filed an amended motion to meet the "amount paid" requirement of section 157.002. Therefore, the trial court could not have held Noble in contempt either for the accrued child support that he had paid by the time of the hearing nor for any arrearages that accrued after Lawreta filed her motion.

Any confusion regarding the meaning of subsection (d) of section 157.162 is clarified by considering subsection (e), which was added to the statute in 2009. *See* Act of May 28, 2009, 81st Leg., ch. 767, § 15, 2009 Tex. Gen. Laws 1938, 1944.[2] Section 157.162(e) states as follows:

> Notwithstanding Subsection (d), the court may award the petitioner costs of court and reasonable attorney's fees in a proceeding described by that subsection if the court finds that:
>
> > (1) on the date the motion for enforcement was filed, the respondent was not current in the payment of child support as ordered by the trial court; and
> >
> > (2) the respondent made the child support payments described by Subsection (d) after the date the respondent was served notice of the motion or otherwise discovered that the motion for enforcement had been filed.

Tex. Fam. Code Ann. § 157.162(e). The original version of SB 865, the bill which ultimately resulted in subsection (e), called for *subsection (d) to be*

---

[2]Because the legislature made the application of subsection (e) prospective as of the Act's effective date of June 19, 2009, the remedies it provides are not available to Lawreta in this case. *See* Act of May 28, 2009, 81st Leg., ch. 767, § 44, 2009 Tex. Gen. Laws 1938, 1949.

*amended* to allow a court to hold a nonmovant in contempt in just this situation; that is, when the nonmovant failed to make the ordered child support payments until after the date of filing of a motion for enforcement and contempt but before the hearing on the motion.[3] The bill analysis interpreted this proposed amendment thusly:

> Amends Section 157.162(d), Family Code, to authorize the court to find a respondent in contempt of court for failure to pay child support *regardless of whether*, rather than if, the respondent appears at the hearing with a copy of the payment record or other evidence, rather than evidence satisfactory to the court, showing that the respondent is current in the payment of child support as ordered by the court.

Senate Comm. on Jurisprudence, Bill Analysis, Tex. S.B. 865, 81st Leg., R.S. (2009) (emphasis added) (introduced version). A subsequent analysis describes the proposed amendment as follows:

> Amends Section 157.162(d), Family Code, to authorize the court, *if the court determines that a respondent has failed to make one or more periodic child support payments as ordered by the court* to find the respondent in contempt of court regardless of whether the

---

[3]Section 12 of the bill as introduced read as follows:

Section 157.162(d), Family Code, is amended to read as follows:

> (d)  The court may [not] find a respondent in contempt of court for failure to pay child support regardless of whether [if] the respondent appears at the hearing with a copy of the payment record or other evidence [satisfactory to the court] showing that the respondent is current in the payment of child support as ordered by the court.

Tex. S.B. 865, 81st Leg., R.S. (2009) (introduced version).

respondent appears at the hearing with a copy of the payment record or other evidence showing that the respondent, as of the time of the hearing, is current in the payment of child support. *Deletes existing text prohibiting the court from finding the respondent in contempt of court for failure to pay child support if the respondent appears at the hearing with a copy of the payment record or other evidence satisfactory to the court showing the respondent is current in the payment of child support as ordered by the court*.

Senate Comm. on Jurisprudence, Bill Analysis, Tex. S.B. 865, 81st Leg., R.S. (2009) (emphasis added) (senate committee report version).

But that version of the bill was not passed; subsection (e) was added instead. *See* Act of May 28, 2009, 81st Leg., ch. 767, § 15, 2009 Tex. Gen. Laws 1938, 1944; *see also* H.J. of Tex., 81st Leg., R.S. 4152 (2009) (detailing amendment striking references to subsection (d) and adding subsection (e) instead). The bill analysis for the enrolled version of subsection (e) describes it as follows:

> Amends Section 157.162(e), Family Code, to authorize the court, *notwithstanding Subsection (d) (relating to prohibiting the court from finding a respondent in contempt of court for failure to pay child support)*, to award the petitioner costs of court and reasonable attorney's fees in a proceeding described by that subsection if the court finds that on the date the motion for enforcement was filed, the respondent was not current in the payment of child support as ordered by the court; and the respondent made the child support payments described by Subsection (d) after the date the respondent was served notice of the motion or otherwise discovered that the motion for enforcement has been filed.

Senate Comm. on Jurisprudence, Enrolled Bill Analysis, Tex. S.B. 865, 81st Leg., R.S. (2009) (emphasis added) (enrolled version).

14

We disagree with the dissent's suggestion that we should not consider this subsequent legislative history in interpreting subsection (d) of the statute.  *See Brown v. De La Cruz*, 156 S.W.3d 560, 564 (Tex. 2004) (considering subsequent amendments in interpreting original version of statute); *Subaru of Am., Inc. v. David McDavid Nissan, Inc*., 84 S.W.3d 212, 223 (Tex. 2002) (considering legislative history of subsequent amendments to determine legislature's intent to change statute's meaning); *see also Tex. Water Comm'n v. Brushy Creek Mun. Util. Dist*., 917 S.W.2d 19, 21 (Tex. 1996) (holding legislature's later interpretation of existing law highly persuasive).  Accordingly, even if it were not clear from the plain language of subsection (d) that the trial court could not hold Noble in contempt in this situation, the subsequent legislative enactments make clear that subsection (d) should be so interpreted.  In other words, a trial court is prohibited from holding a nonmovant in contempt for failure to make specified child support payments if the motion to enforce causes him or her to make the missed payments in full, albeit late.

Lawreta contends that this interpretation of section 157.162(d) means that "all of the obligors in Texas could conceivably wait until they had been sued for enforcement of their child support obligation before paying off their arrearage and thus avoid punishment for their violations."  She contends that "such a result could not have been intended by the Legislature's enactment of Section

15

157.162(d)." But that is precisely what the language of section 157.162(d) and the subsequent enactment of subsection (e) indicate. The legislature has determined that it is more important that past due child support be paid—even in the face of a motion to enforce—than for nonmovant parents to be punished by criminal contempt in such situations. *See* Tex. Gov't Code Ann. § 311.021(5) (Vernon 2005) (providing that in enacting a statute, it is presumed that public interest is favored over any private interest). It is not our place to question the legislature's judgment on such policy determinations. Moreover, the legislature has not left payee parents without a remedy in cases to which subsection (e) applies.

Accordingly, we conclude and hold that the trial court abused its discretion by holding Noble in criminal contempt for failing to make the March, April, and June 2008 payments when he was current in those payments at the February 2009 hearing on the motion to enforce. *See* Tex. Fam. Code Ann. § 157.162(d).

**D.  No Waiver By Agreeing to Reconsideration Order**

Both Lawreta and the Attorney General contend that Noble waived his complaint about the contempt order because the trial court's order on reconsideration was an agreed order by virtue of a recital stating that "the parties announced to the court that an agreement had been reached" and that "[a]ll parties and attorneys . . . request the Court to accept and approve the agreement

16

entered into by the parties." Noble and his counsel both signed the order under the heading, "APPROVED AS TO FORM."

Waiver is defined as an intentional relinquishment of a known right or conduct inconsistent with claiming that right. *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003); *Horsley-Layman v. Adventist Health Sys./Sunbelt, Inc.*, 221 S.W.3d 802, 808 (Tex. App.—Fort Worth 2007, pet. denied). A valid consent judgment waives any error, except for jurisdictional error, contained in the judgment and precludes appellate review of that judgment. *In re A.M.S.*, 277 S.W.3d 92, 99 (Tex. App.—Texarkana 2009, no pet.); *Baw v. Baw*, 949 S.W.2d 764, 766 (Tex. App.—Dallas 1997, no writ). Each party must explicitly and unmistakably give its consent for a consent judgment to be valid. *Chang v. Nguyen*, 81 S.W.3d 314, 318 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Baw*, 949 S.W.2d at 766. For instance, the body of the judgment must suggest that the case had been settled or that the judgment was rendered by consent. *Chang*, 81 S.W.3d at 818; *Oryx Energy Co. v. Union Nat'l Bank*, 895 S.W.2d 409, 417 (Tex. App.—San Antonio 1995, writ denied); *First Am. Title Ins. Co. v. Adams*, 829 S.W.2d 356, 364 (Tex. App.—Corpus Christi 1992, writ denied). Here, the parties and their attorneys agreed to the form of the order, which recites that the parties reached an agreement and requested that the trial court approve it.

17

But the order does not indicate that Noble intentionally waived his objection to being held in contempt in the first place; it merely shows that the parties agreed on a way for him to serve the already-imposed sentence so that he would be able to maintain employment. An agreed judgment should be construed in the same manner as a contract. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000); *Smith v. Huston*, 251 S.W.3d 808, 825 (Tex. App.—Fort Worth 2008, pet. denied). Our primary goal in construing a written contract is to ascertain and give effect to the intent of the parties as expressed in the instrument. *Balandran v. Safeco Ins. Co.*, 972 S.W.2d 738, 741 (Tex. 1998); *Nat1 Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *Ferguson v. Ferguson*, 111 S.W.3d 589, 594 (Tex. App.—Fort Worth 2003, pet. denied). Thus, in determining the parties' agreement, we are to examine all parts of the judgment and the surrounding circumstances. *Ferguson*, 111 S.W.3d at 594.

Here, Noble raised his argument regarding section 157.162(d) at the first hearing on the motion to enforce. After the trial court rejected this argument and rendered the first contempt order, Noble filed a motion for reconsideration, specifically contending that he would not be able to support his children if confined in jail for 180 days and asking for the trial court to either modify the sentence to time served or to reduce the sentence and allow it to be served at times that would facilitate his continued employment for the support of his children. Nothing in the trial court's order on reconsideration indicates that

18

Noble waived his objection to being held in contempt in this situation; instead, it shows that the parties agreed that if Noble were to have to serve a sentence for criminal contempt, all involved would be best served if he were incarcerated only on the second and fourth weekends of each month. *See Ferguson*, 111 S.W.3d at 595–96. Therefore, we conclude and hold that Noble did not waive his objection to the contempt order under section 157.162(d).

## V. Conclusion

Having determined that Noble is entitled to relief from the trial court's February 12, 2009 contempt order, we conditionally grant the petitions for writ of mandamus and habeas corpus.[4] *See* Tex. R. App. P. 52.8(c). We are confident that the trial court will vacate the parts of its February 12, 2009 order (1) holding Noble in criminal contempt for failing to make the March, April, and June 2008 child support payments and (2) sentencing him to 174 days' confinement on the second and fourth weekends of each month, in accordance with this opinion. We instruct our clerk to issue the writs only if the trial court fails to do so.

ANNE GARDNER
JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

---

[4]Our analysis and conclusion that the trial court abused its discretion by holding Noble in criminal contempt applies equally to the abuse of discretion standard applied in reviewing writs of habeas corpus. *See Ex parte Meltzer*, 180 S.W.3d 252, 255–56 (Tex. App.—Fort Worth 2005, orig. proceeding).

19

LIVINGSTON, C.J., filed a dissenting opinion.

DELIVERED:   March 9, 2011

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-09-00464-CV

IN RE NOBLE EZUKANMA                                     RELATOR

-----------

## ORIGINAL PROCEEDING

-----------

## DISSENTING OPINION ON REHEARING

-----------

I respectfully dissent to the majority's opinion and judgment. I believe the majority has incorrectly interpreted Texas Family Code section 157.162(d). Tex. Fam. Code Ann. § 157.162(d) (Vernon Supp. 2010). Subsection (d) of section 157.162 provides,

> The court may not find a respondent in contempt of court for failure to pay child support if the respondent appears at the hearing with a copy of the payment record or other evidence satisfactory to the court showing that the respondent is current in the payment of child support as ordered by the court.

*Id.* That subsection is applicable to any matter relating to a contempt motion filed on or after the effective date of the 2007 version of section 157.162, which was June 15, 2007. Act of May 23, 2007, 80th Leg., R.S., ch. 1189, § 1, 2007 Tex. Gen. Laws 4054, 4054. The 2009 version of subsection (d) reads identically to the prior version. There is no change to subsection (d) in the 2009 version of section 157.162; however, the legislature did add a new subsection, subsection (e), in the 2009 version. Act of May 28, 2009, 81st Leg., R.S., ch. 767, § 15, 2009 Tex. Gen. Laws 1938, 1944. The majority uses the new 2009 subsection (e) to assist in its interpretation of subsection (d); this it should not do.

According to the legislative history, subsection (e) was added and effective June 19, 2009 and applies "only to a motion for enforcement that is filed on or after the effective date of [the] Act. A motion for enforcement filed before the effective date of [the] Act is governed by the law in effect immediately before that date, and the former law is continued in effect for that purpose." Tex. Fam. Code Ann. § 157.162(e) historical note (Vernon Supp. 2010) [Act of May 28, 2009, 81st Leg., R.S., ch 767, § 44, 2009 Tex. Gen. Laws 1938, 1949]. Furthermore, subsection (e), which clarifies that petitioners may still recover costs even if the contemnor cures the allegations of contempt, allows the movant to recover costs of court and reasonable attorney fees. *Id*. § 157.162(e).

2

Subsection (e), in my opinion, has virtually nothing to do with subsection (d), which is really the subsection at issue in this case.

Thus, since both versions of subsection (d) are the same, the result should be no different. The addition of subsection (e) later should not affect subsection (d). Therefore, I respectfully disagree with the majority opinion because of its interpretation of the phrase "showing that the respondent is current in the payment of child support as ordered by the court." *Id.* § 157.162(d); *see* Maj. Op. at 8–10.

"A violation of a court's order is an issue of contempt." *In re Acceptance Ins. Co.*, 33 S.W.3d 443, 449 (Tex. App.—Fort Worth 2000, orig. proceeding) (citing *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding)). The purpose of criminal contempt is to punish for a contempt violation of a court order. *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding). Only if the order is void is the applicant entitled to relief. *In re Coppock*, 277 S.W.3d 417, 418 (Tex. 2009) (orig. proceeding). We are to presume the order is valid. *In re Luebe*, No. 01-09-00908-CV, 2010 WL 1546961, at *2 (Tex. App.—Houston [1st Dist.] Apr. 2, 2010, orig. proceeding). Moreover, the "purpose of punitive-contempt confinement is to punish for disobedience for some completed act, which affronted the dignity of the court." *Id.* at *2. In interpreting a statute, we are to preserve its validity and consider the object to be attained as

3

well as the common law and consequences of a particular construction. Tex. Gov't Code Ann. §§ 311.021, .023 (Vernon 2005). Thus, interpreting this provision to absolve the contemnor of responsibility for contempt just by curing a past due child support payment on or before the hearing date is nonsensical. *See* Maj. Op. at 14–15. Thus, I believe the only reasonable interpretation is that the contemnor must be current in *all* child support payments at the time of the hearing on the motion for enforcement, or he foregoes this statutorily-created "free pass" to avoid criminal contempt for the past-due violations alleged in the motion to enforce. Otherwise, any and all contemnors would simply be able to cure the past allegations of contempt and always avoid the punishment of contempt. This is not punishing the contemnor for further future unnoticed allegations of contempt; it simply means the contemnor is no longer qualified for the section 157.162(d) method of purging his past criminal contempt. In this case, the majority's interpretation precludes the trial court from enforcing its own orders for payment of child support at a time when the contemnor was in arrearages of nearly $30,000.00.

For these reasons, I respectfully dissent from the majority decision and would deny the relator's requested relief.

4

TERRIE LIVINGSTON
CHIEF JUSTICE

DELIVERED:   March 9, 2011